IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                              :
BENNY O. IKO, et al.
                              :

    v.                        :  Civil Action No. DKC 2004-3731

                              :
JON P. GALLEY, et al.
                              :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this wrongful death action is Plaintiffs' motion for leave to amend their complaint. (Paper 59). The issues have been briefed fully and the court now rules, no hearing being deemed necessary. *See* Local Rule 105.6. For the reasons that follow, the court will grant the motion in part and deny it in part.[1]

**I. Background**

**A. Procedural Background**

This lawsuit arises from the death of Ifeanyi A. Iko ("the Decedent"), who died on April 30, 2004, after multiple correctional officers forcibly removed him from a prison cell (the "cell extraction") while incarcerated at Western Correctional Institution ("WCI"). On November 11, 2004, Plaintiffs Dr. Benny O. Iko, Loreen Jones, and Christine Iko filed suit against Jon P. Galley, warden of WCI; Lt. James Shreve of WCI; and WCI correctional officers John

---

[1] The resolution of this motion will render moot Plaintiffs' recently filed supplemental motion for leave to amend (paper 76) and it will be denied.

Does I through VI.[2]  (Paper 1).  The complaint listed the following counts: Count I, violation of 42 U.S.C. § 1983; Count II, violation of the Maryland Constitution; Count III, battery; Count IV, assault; Count V, intentional infliction of emotional distress; Count VI, wrongful death; Count VII, survival action; and Count VIII, gross negligence.

On March 29, 2005, Plaintiffs filed a consent motion for leave to file their First Amended Complaint (paper 15), which the court granted.  The amended complaint added as a plaintiff "to the use of Lewechi Ijeoma Oko," who is the mother of the Decedent; and added as defendants Brian Clise, Lyn Detrick, Jason Harbaugh, Mark Raley, Adam Whitacre, Sergeant Russell Suder, Lieutenant Michael Jacobs, Paul F. Defanbaugh, Sergeant Allan Hall, and Captain Robert Tichnell, all of whom worked at WCI.  It also added factual allegations pertaining to the cell extraction.

On December 23, 2005, Plaintiffs filed a motion for leave to file a Second Amended Complaint.  (Paper 59).  Plaintiffs seek to add as a plaintiff "to the use of Ndukwe Amyim Iko," the Decedent's adult son who lives in Nigeria, and to add as defendants Russell Zang, a correctional lieutenant at WCI; Louise Gordon, chief of

---

[2] The complaint states that Dr. Iko is the brother of the Decedent, and he is bringing suit as the personal representative of the Estate of Ifeanyi A. Iko; Ms. Jones is the former wife of the Decedent and she is bringing suit as the parent and next friend of Benny Iko, the minor son of the Decedent; and Christine Iko is the adult daughter of the Decedent.

security at WCI; and Joseph Mercer, II, a lieutenant in the internal investigative unit ("IIU") in the Department of Public Safety and Correctional Services.  Plaintiffs also wish to add a new claim specifically against Mercer: a 42 U.S.C. § 1983 claim for impeding Plaintiffs' access to the courts.[3]  Finally, Plaintiffs seek to make minor changes to the factual allegations.  Defendants state that they do not oppose the motion to add the new plaintiff, and they do not oppose the addition of Gordon and Zang as defendants.  (Paper 64, at 1 n.1).  Defendants object to the addition of Mercer as a defendant and the new count specifically against him.[4]

## B. Factual Background

Plaintiffs make the following allegations in their First Amended Complaint.  WCI is a medium-security prison operated by the state of Maryland in Cumberland, Maryland.  The Decedent was the victim of a homicide on April 30, 2004, while he was incarcerated at WCI.  On this date, the Decedent was removed forcibly from a

---

[3]  Plaintiffs state in their memorandum in support of their motion to amend that "since the claims against Lt. Mercer are different than those against the other Defendants, a new count has been added alleging his violations of Constitutional rights." (Paper 59, at 2).  Plaintiffs seek to add Mercer as a defendant to proposed new Count II and the gross negligence claim.

[4]  Defendants do not state whether they oppose the minor changes to the factual allegations, and they have not offered any arguments against these amendments.

cell by multiple correctional officers wearing protective gear. The cell extraction was recorded on videotape.

During the extraction, at least two of the correctional officer defendants sprayed three cans of pepper spray into the Decedent's cell, an amount that exceeded the maximum amount allowed by applicable rules and regulations.  After the pepper spray was used, one or more of the correctional officer defendants applied metal handcuffs and shackles and placed a hood-like mask over the Decedent's head, with the mask wrapped about the Decedent's mouth and nose, which further restricted his ability to breathe.[5]

While the Decedent's hands were handcuffed behind his back, his feet shackled, and his head and face covered with a cloth mask, the Decedent was transported via a wheelchair from the segregation cellblock to a special observation housing unit at approximately 3 p.m.  He was placed on the floor of a cell in the unit on his stomach while still handcuffed, hooded, and shackled.  While in this position, one or more of the correctional officer defendants placed his knees and weight on the Decedent's back, legs, and arms while others tried to locate plastic flex cuffs to replace the metal handcuffs; it took correctional officers about five minutes to locate a pair.

---

[5] Plaintiffs assert that the mask was applied incorrectly and used improperly, and that the Decedent should have received adequate medical attention as quickly as possible after he was restrained.

At approximately 4:30 p.m., correctional officers discovered the Decedent's body, cold and without a pulse.[6]  At 4:37 p.m., a prison official summoned an ambulance to WCI asserting that the Decedent was in cardiac arrest.  A paramedic reported signs of rigor mortis in the Decedent and received a doctor's permission to cease life-saving efforts.

The Medical Examiner ruled that the Decedent's death was a homicide.  The autopsy report issued by the Medical Examiner ruled that the Decedent died of asphyxiation "caused by chemical irritation of the airways by pepper spray, facial mask placement," and the manner in which the Decedent was restrained.

Plaintiffs further allege that Defendant Galley and one or more of the correctional officer defendants engaged in a cover-up of the killing of the Decedent.  In addition, they assert that Defendants disregarded the applicable rules and procedures for notifying the next of kin, and as a result, the Iko family did not learn of the Decedent's death until a reporter for *The Baltimore Sun* called approximately two weeks later.

The Second Amended Complaint that Plaintiffs seek to file does not add any additional factual allegations with respect to Mercer

---

[6] Plaintiffs allege that one or more of the correctional officer defendants prevented medical personnel from attending to the Decedent.

specifically.[7]   Instead, Plaintiffs seek to add Mercer to the already existing allegation that Defendant Galley and one or more of the correctional officer defendants engaged in a cover-up of the killing of the Decedent.[8]

## II. Standard of Review

A party may move to amend a complaint pursuant to Rule 15(a) and "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).  Under Rule 15(a), "[t]he decision to grant a party leave to amend its pleadings rests within the sound discretion of the district court." *Healthsouth Rehab. Hosp. v. Am. Red Cross*, 101 F.3d 1005, 1010 (4th Cir. 1996), *cert. denied*, 520 U.S. 1264 (1997) (citing *Sandcrest Outpatient Serv. v. Cumberland*

---

[7] Mercer is a former correctional officer who currently is an acting lieutenant in the IIU of the Maryland Department of Public Safety and Correctional Services.  He was the lead investigator into the Decedent's death.

[8] In their reply memorandum, Plaintiffs allege that Mercer: destroyed the spit mask that was placed over the Decedent's head, failed to conduct testing of the spit mask, destroyed the overalls and underwear the Decedent was wearing, failed to inspect or preserve the cans of pepper spray used during the cell extraction, destroyed videotapes taken by cameras in the building from which the Decedent was extracted, produced original photos during his deposition of photos that purportedly show that the Decedent's shorts were soaked with pepper spray, failed to contact Maryland State Police in violation of Maryland law, failed to notify the Decedent's family as required by a Maryland Department of Public Safety and Correctional Services directive, failed to examine the cell from which the Decedent was extracted, lacked training as a crime scene technician, and failed to have key participants interviewed.  (Paper 66, at 2-4).  These factual allegations are not included in Plaintiffs' proposed Second Amended Complaint, even though Plaintiffs learned this information during the October 7, 2005, deposition of Mercer, prior to the filing of their motion.

*County Hosp. Sys.*, 853 F.2d 1139, 1148 (4th Cir. 1988)).   The general and oft-cited rule is that leave sought should be given freely, "in the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. Analysis

Plaintiffs seek to add the following claim against Mercer:

> The acts of Defendant Mercer constituted conduct under color of state law which deprived Decedent and Plaintiffs of rights, privileges, and immunities secured by the Constitution and laws of the United States. The right to pursue legal redress for claims is protected by the First and Fourteenth Amendments of the United States Constitution. A corollary of this right is that efforts by state actors to impede access to courts or administrative agencies provide the basis for a Constitutional claim under 42 U.S.C. § 1983.

(Paper 59, attach. 1, at ¶ 36).  Defendants contend that leave to amend should be denied because they would be prejudiced by Plaintiffs' failure to assert the proposed Count II against Mercer until thirteen months after filing their lawsuit and after discovery has been completed.   Defendants also assert that amendment would be futile because the proposed claim is not a cognizable cause of action and Mercer is entitled to qualified immunity.   Plaintiffs respond that Defendants have not shown

7

sufficient prejudice to justify denial of their motion to amend, and that amendment would not be futile.

## A. Prejudice

The United States Court of Appeals for the Fourth Circuit has explained that "[d]elay alone without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980). *See also Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987), *cert. denied*, 485 U.S. 977 (1988)("A motion to amend under Rule 15(a) may be denied where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant."); *Pittston Co. v. United States*, 199 F.3d 694, 706 (4th Cir. 1999)(quoting *Davis*, 615 F.2d at 613).

Defendants contend that on January 21, 2005, Plaintiffs' counsel was sent a complete copy of the IIU's criminal investigation into the Decedent's death along with a copy of the videotape that was made during the cell extraction. (Paper 64, at 2). Defendants argue that, based on the IIU investigation and the videotape, Plaintiffs had sufficient information to assert the proposed count against Mercer, and failure to assert the count in a timely manner supports a denial. Defendants also argue that they would be prejudiced because the proposed claim adds "what is in effect a new suit against a completely distinct and separate

defendant." (Paper 64, at 4). They assert that factual discovery, which closed December 23, 2005, would have to be re-opened to assess what information Plaintiffs have regarding the proposed count, and then Defendants would have to consider retaining experts to support a defense.[9] Finally, they argue that a separate defense for this proposed count would hurt the presentation of the defense for the original defendants. *Id*. at 5.

To the extent that Defendants argue that Plaintiffs had sufficient knowledge in January 2005 after receiving the IIU investigation and the videotape to allow Plaintiffs to add the proposed count, Defendants have failed to identify specifically what information in this evidence should have put Plaintiffs on notice as to the additional allegations Plaintiffs now wish to add. By contrast, Plaintiffs proffer the excerpts of the October 2005 Mercer deposition to demonstrate that Plaintiffs learned this new information only two months before filing their motion for leave to amend. Defendants' argument that they will be prejudiced is similarly vague. They offer no specifics as to what or how much additional discovery would be needed, nor do they explain why a defense for Mercer would diminish the presentation of the defense for the original defendants. Defendants' vague assertion of undue

---

[9] Under the scheduling order in place at the time, expert discovery was scheduled to close May 17, 2006. Subsequent to Defendants' filing of their opposition memorandum, the expert discovery deadline was extended to July 16, 2006. (Paper 75).

prejudice do not overcome the mandate in Rule 15(a) of liberal amendment. *See Forman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

Defendants rely on *Chaudhry v. Prince George's County, Md.*, 626 F.Supp. 448 (D.Md. 1985), in which the plaintiff sought to amend his complaint some fifteen months after suit was instituted and after the parties had completed all of the discovery. The argument for denial due to delay in *Chaudhry* was compelling: Before the plaintiff filed his motion, the defendants already had filed motions for partial and full summary judgment, and the court had extended the discovery deadline. Five months later during a telephone status conference, the parties indicated that they wished to file further motions for summary judgment. The plaintiff in *Chaudhry* did not move for leave to amend his complaint until a month later.[10]  *Id.* at 451. Here, the parties have not filed any

---

[10]  The other cases cited by Defendants also are distinguishable. In *Grant v. News Group Boston, Inc.*, 55 F.3d 1, 5 (1st Cir. 1995), the plaintiff sought to add eighty-seven new allegations and five new legal theories. In *Jamison v. McCurrie*, 388 F.Supp. 990, 993 (N.D.Ill. 1975), the plaintiff already had been granted leave to amend on two previous occasions and her third motion to amend was filed more than two years after the suit was filed. In *Glatt v. Chic. Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996), the United States Court of Appeals for the Seventh Circuit stated that the likelihood that a plaintiff sought to protract the litigation and complicate the defense by adding a new claim was among the factors a court should consider. Defendants, however,
(continued...)

dispositive motions.   In fact, at the time Plaintiffs filed their

second  motion  to  amend,  the  deadline  for  filing  pretrial

dispositive motions was set for July 17, 2006, some seven months

away.   (Paper 63).   The deadlines have since been extended, and

currently the deadline for pretrial dispositive motions is set for

September 15, 2006.   (Paper 75).   Nor is there a risk that the

trial date will be delayed because no trial date has been set.   *See*

*Deasy,* 833 F.2d at 41 (affirming the denial of a motion to amend

where the motion was made near the time of trial).   Accordingly,

Defendants have failed to show prejudice sufficient to warrant a

denial of Plaintiffs' motion to amend.

## B. Futility

In the alternative, Defendants argue that adding the proposed

claim is futile because it would not survive a motion to dismiss.[11]

Defendants contend that the proposed count states no cognizable

cause of action, and even if it did, Mercer would be entitled to

---

[10](...continued)
have offered no allegations that Plaintiffs have proposed the new
count in order to to protract the litigation or complicate the
defense.

[11] Defendants are correct in stating that the proposed claim
must be able to survive a motion to dismiss.   *See Williams v. U.S.*
*Merit Sys. Prot. Bd.*, 55 F.3d 910, 917 (4th Cir. 1995).   The
affirmative defense of qualified immunity may be asserted in a
motion to dismiss.   *See Ridpath v. Bd. of Governors Marshall Univ.*,
447 F.3d 292 (4th Cir. 2006); *Meeker v. Edmundson*, 415 F.3d 317 (4th
Cir. 2005).

qualified immunity.  (Paper 64, at 5).  They are correct in both assertions.

In the access-to-courts case of *Christopher v. Harbury*, 536 U.S. 403 (2002), the Supreme Court identified two categories of such claims.  The first is forward-looking claims in which:

> systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time.  Thus, in the prison-litigation cases, the relief sought may be a law library for a prisoner's use in preparing a case, *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Lewis v. Casey,* 518 U.S. 343, 346-348, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), or a reader for an illiterate prisoner, *id.,* at 347-348, 116 S.Ct. 2174, or simply a lawyer, *ibid.* In denial-of-access cases challenging filing fees that poor plaintiffs cannot afford to pay, the object is an order requiring waiver of a fee to open the courthouse door for desired litigation, such as direct appeals or federal habeas petitions in criminal cases, or civil suits asserting family-law rights, *e.g., Boddie v. Connecticut,* 401 U.S. 371, 372, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (divorce filing fee); *M.L.B. v. S.L.J.,* 519 U.S. 102, 106-107, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (record fee in parental-rights termination action).  In cases of this sort, the essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs.  The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed.

*Id.* at 413 (footnotes omitted).

The second category is backward-looking claims, which:

> covers claims not in aid of a class of suits
> yet to be litigated, but of specific cases
> that cannot now be tried (or tried with all
> material evidence), no matter what official
> action may be in the future. The official acts
> claimed to have denied access may allegedly
> have caused the loss or inadequate settlement
> of a meritorious case, *e.g., Foster v. Lake
> Jackson,* 28 F.3d 425, 429 ([5th Cir.] 1994);
> *Bell v. Milwaukee,* 746 F.2d 1205, 1261 ([7th
> Cir.] 1984) ("[T]he cover-up and resistance of
> the investigating police officers rendered
> hollow [the plaintiff's] right to seek
> redress"), the loss of an opportunity to sue,
> *e.g., Swekel v. River Rouge,* 119 F.3d 1259,
> 1261 ([6th Cir.] 1997) (police coverup extended
> throughout "time to file suit . . . under . .
> . statute of limitations"), or the loss of an
> opportunity to seek some particular order of
> relief, as Harbury alleges here.  These cases
> do not look forward to a class of future
> litigation, but backward to a time when
> specific litigation ended poorly, or could not
> have commenced, or could have produced a
> remedy   subsequently   unobtainable.     The
> ultimate  object  of  these  sorts  of  access
> claims, then, is not the judgment in a further
> lawsuit, but simply the judgment in the access
> claim itself, in providing relief obtainable
> in no other suit in the future.

*Id*. at 413-14 (footnotes omitted).  Because the right to court
access is "ancillary to the underlying claim . . . . It follows
that the underlying cause of action, whether anticipated or lost,
is an element that must be described in the complaint, just as much
as allegations must describe the official acts frustrating the
litigation."  *Id*. at 415.  Where the claim looks backward, "the
complaint must identify a remedy that may be awarded as recompense

but not otherwise available in some suit that may yet be brought."[12]
*Id.*

Plaintiffs' claims do not fall neatly into either category, although they most clearly fit a backward looking, impairment type claim.  Plaintiffs allege that correctional officials frustrated Plaintiffs' efforts to prepare and file a lawsuit in the present time.  The opportunity to file suit has not been "lost for all time;" indeed, Plaintiffs are pursuing currently a lawsuit related to the Decedent's death, although they appear to contend those efforts were impaired.  In addition, Plaintiffs do not seek removal of a frustrating condition in order to allow them to pursue a separate claim.  On the other hand, although Plaintiffs appear to be pursuing a backward-looking claim in that their goal is a judgment stemming from the access claim itself, Plaintiffs do not and cannot allege that their claims have been lost or that any litigation ended poorly as a result of official actions.

Plaintiffs do claim that their access to the courts has been "impede[d]."  Several courts have considered claims involving alleged attempts by government actors to impede the plaintiff's access to the courts.  For instance, *Bell v. City of Milwaukee*, 746

---

[12] The Court noted that an action underlying a backward-looking claim ordinarily will not be tried independently, "a fact that enhances the natural temptation on the part of plaintiffs to claim too much by alleging more than might be shown in a full trial focused solely on the details of the predicate action." *Harbury*, 536 U.S. at 416.  In a footnote, the Court added that a backward-looking claim "may still be timely and subject to trial, but for a different remedy than the one sought under the access claim, or against different defendants." *Id.* at n.13.

F.2d 1205 (7th Cir. 1984), *overruled on other grounds*, 414 F.3d 783 (7th Cir. 2005), involved an access-to-courts claim brought by the family of Daniel Bell, who was shot fatally on February 2, 1958, by Milwaukee police officer Thomas Grady, Jr., while he was on patrol with his partner Louis Krause.  Soon after, an inquest was held into Daniel Bell's death, and the inquest jury returned a verdict that the killing was justifiable.

On August 10, 1959, Daniel Bell's father, Dolphus Bell, filed suit for wrongful death against the City of Milwaukee.  The defendants relied on Grady's false testimony to resist the lawsuit. After a mistrial, the wrongful death action was reassigned for trial.  The defendants made a settlement offer, and Dolphus Bell stated he was willing to accept it, but he never signed a settlement agreement.  The case was dismissed on the merits. Dolphus Bell later refused to accept a settlement check.

The facts surrounding Bell's fatal shooting apparently remained hidden until 1978, when Krause went to the district attorney and revealed that he and Grady had lied about what occurred.  As a result, Grady pleaded guilty to homicide by reckless conduct and to perjury in connection with the Bell inquest.  He was sentenced to seven years' imprisonment.

In October 1979, the Bell family filed another civil action. The family alleged, *inter alia*, that Grady, Krause, Detective Sergeant Edwin Shaffer and Chief of Police Howard Johnson interfered with the Bell family's ability to pursue civil claims arising from the shooting.  The case went to trial in 1981.  The

evidence showed that Grady and Krause had conspired to conceal facts of the shooting. *Bell*, 746 F.2d at 1256. For instance, in order to justify the shooting as an attempt to stop a fleeing felon, Grady and Krause represented falsely that, shortly before the shooting, a fleeing Bell claimed he was a "holdup man" and that they saw a large knife in Bell's hand. When Grady modified his story because it appeared to be suspect, Krause supported the modified version, and when the autopsy report disclosed that Bell was shot from a closer distance than proffered in the modified version, Krause again changed his explanation. *Id.* Shaffer participated in the cover-up by accepting the modified versions even though they conflicted with a report taken by an investigator immediately after the shooting, by refusing to allow a reporter to copy a subsequent report, by writing an internal memorandum to the district attorney that did not refer to discrepancies in Grady's story, and by giving testimony at the grand jury inquest that corroborated Grady's modified version. *Id.* at 1256-57. With regard to Police Chief Johnson, the facts showed that he was aware of the conflicts in Grady's explanations, and that he failed to scrutinize and deter the efforts of Grady and others to conceal the truth. *Id.* at 1258.

At the end of the trial, the district court directed a verdict that Grady and Krause conspired to cover-up the facts of the shooting. The jury also found that defendants Johnson and Shaffer participated with Grady and Krause in a conspiracy to cover-up the

facts regarding the shooting.[13]   *Bell*, 746 F.2d at 1225.   The
defendants appealed to the Seventh Circuit.

In analyzing the family's claim, the Seventh Circuit
recognized an access-to-court claim under the Fourteenth Amendment.
The court stated:

> As the Fifth Circuit held in *Ryland v.
> Shapiro*, [708 F.2d 967 (5th Cir. 1983)], a
> conspiracy to cover up a killing, thereby
> obstructing legitimate efforts to vindicate
> the killing through judicial redress,
> interferes with the due process right of
> access to courts, which is protected by
> Sections 1985(2) and 1985(3). Judicial access
> must be "adequate, effective, and meaningful."
> *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct.
> 1491, 1495, 52 L.Ed.2d 72 [1977].   To deny
> such access defendants need not literally bar
> the courthouse door or attack plaintiffs'
> witnesses.  This constitutional right is lost
> where, as here, police officials shield from
> the public and the victim's family key facts
> which would form the basis of the family's
> claims for redress.  A contrary interpretation
> of the right to due process would encourage
> police officials to conceal the circumstances
> relating to unlawful killings committed under
> color of state law and other deprivations of
> federal rights which Section 1983 was designed
> to remedy. *See also Hampton v. Hanrahan*, 600
> F.2d 600, 628 (7th Cir. 1979), reversed in part
> on other grounds, 446 U.S. 754, 100 S.Ct.
> 1987, 64 L.Ed.2d 670 (directed verdict for
> defendants in civil rights conspiracy action
> reversed and remanded because, *inter alia*,
> federal law enforcement defendants engaged in
> "dilatory and obstructive tactics to conceal
> evidence" regarding an unlawful raid); *Stone
> v. City of Chicago*, 738 F.2d 896 (7th Cir.
> 1984); *Britt v. Suckle*, 453 F.Supp. 987
> (E.D.Tex.1978).

---

[13] McCauley, the district attorney at the time of the shooting,
also was named as a defendant and went to trial.  At the close of
the evidence, the court directed a verdict in his favor.  *Id.* at
1272.

*Bell*, 746 F.2d at 1261 (footnote omitted).  The court observed that Dolphus Bell had filed a wrongful death claim in 1959, but the cover-up and the resistance of the police officers "rendered hollow" his right to seek redress under the state wrongful death statute and federal civil rights laws.  *Id.*

The court further stated that the facts in *Bell* were different than other cases:

> where a plaintiff simply alleges that law officers were lax in their investigatory duties. *See, e.g., Scolnick v. Winston*, 219 F.Supp. 836, 841 (S.D.N.Y. 1963) (alleged failure of state attorney general and assistant attorney general to investigate charges by plaintiffs of threats to their lives did not deprive plaintiffs of equal protection), *affirmed*, 329 F.2d 716 (2nd Cir. 1964), *certiorari denied*, 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35; *cf. Jackson v. City of Joliet*, 715 F.2d 1200 (7th Cir. 1983) (ineffective rescue attempt by city employees does not constitute deprivation of life without due process), *certiorari denied*, 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720; *Beard v. O'Neal*, 728 F.2d 894 (7th Cir. 1984) (in a *Bivens* action F.B.I. informant who accompanied the murderer the night of the shooting and witnessed the murder did not proximately cause a deprivation of constitutional rights, where the witness did not conspire to commit or approve of the act and did not take dramatic steps to prevent the murder for fear of his own safety).

*Bell*, 746 F.2d at 1261-62.  The court held that there was a constitutional duty for municipal employees investigating a wrong perpetrated by a co-employee under color of state law not to "conceal the perpetration of that wrong." *Id.* at 1262.  The court explained:

18

> The facts surrounding the killing were in the
> sole province of members of the Milwaukee
> police department.  Officers Grady and Krause
> willfully and intentionally lied and concealed
> the true facts.  Although the record below
> does not conclusively establish that Johnson,
> Shaffer, or non-defendants Woelfel, Glaser,
> and McCauley had complete knowledge of what
> happened the night of the killing, the record
> does show that they were cognizant of glaring
> inconsistencies and conflicts in Grady's
> explanation, and in some instances facilitated
> an explanation more favorable to the police
> department.  The inquest jury's incorrect
> finding of self-defense is a partial product
> of the false testimony of Grady, Krause, and
> Shaffer, and the biased examination of
> witnesses by District Attorney McCauley.  This
> finding presented a formidable obstacle to
> learning the facts and vindicating Daniel
> Bell's death. From the testimony of Hughes,
> Vorpagel, Krause, and the extensive body of
> documentary evidence the jury could reasonably
> conclude that the concealment interfered with
> the Bell family's efforts to seek redress,
> particularly Dolphus Bell's wrongful death
> action brought against the City of Milwaukee
> and Grady.

*Id.* at 1262.

Other courts similarly have held that the actions of law enforcement officials to cover-up facts or to conceal evidence may result in a denial of the right of access.  *See Remus v. Sheahan,* No. 05 C 1495, 2006 WL 418654, at *9 (N.D.Ill. Feb. 16, 2006) ("An access to court claim can be based on a government coverup that has prevented a citizen from bringing a meritorious claim or that has forced the citizen into an unfavorable settlement."); *Estate of Smith v. Marasco*, 318 F.3d 497, 511 (3rd Cir. 2003) ("Coverups that prevent a person who has been wronged from vindicating his rights violate the right of access to the courts protected by the

substantive due process clause."); *Harrell v. Cook,* 169 F.3d 428, 432 (7th Cir. 1999) ("Deliberate destruction of evidence can sabotage a case just as effectively as the conduct described in *Bell*, if it effectively deprives the plaintiff of essential proof); *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997) (stating that "if a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts"); *Love v. Bolinger*, 927 F.Supp. 1131, 1138 (S.D.Ind. 1996)(stating that the "cover-up of a killing which obstructs 'legitimate efforts to vindicate the killing through judicial redress interferes with the due process right of access to the courts'" (quoting *Bell*, 746 F.2d at 1261)). *Cf. Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994) (stating that the right of access to the courts "encompasse[s] a right to file an action, but not the right to proceed free of discovery abuses after filing").

Several of these and other cases have held, however, that to state an access-to-the-courts claim or to survive a motion for summary judgment on such a claim, the plaintiffs must allege or proffer sufficient facts to identify how the alleged cover-up frustrated their access or rendered their lawsuits ineffective. *See Jennings v. City of Stillwater,* 383 F.3d 1199, 1209 (10th Cir. 2004) (affirming a grant of summary judgment where the plaintiff did not allege or present evidence in her access-to-courts claim that the settlement she obtained was inadequate); *Swekel*, 119 F.3d

at 1264 (affirming summary judgment for defendants because the plaintiff presented no evidence that the defendants' actions rendered state court remedies ineffective); *Vasquez v. Hernandez,* 60 F.3d 325, 329 (7th Cir. 1995)(affirming summary judgment where there were no allegations that the plaintiffs were prevented from pursuing a tort action in state court or that the value of a state court action was reduced due to an alleged cover-up); *Love*, 927 F.Supp. at 1264 (affirming the motion to dismiss where plaintiffs did not allege that their present lawsuit was "hindered, devalued, or otherwise damaged by the cover-up"); *Estate of Smith*, 318 F.3d at 512 (affirming the district court's grant of summary judgment in favor of the defendants where the alleged cover-up did not prevent the plaintiffs from filing suit or render their access to the courts ineffective or meaningless).

In the present case, Plaintiffs' proposed count does not adequately plead a denial-of-access claim. First, Plaintiffs have failed to identify the underlying cause of action that they are unable to bring or are frustrated in bringing. Instead, Plaintiffs allege generally that Mercer along with Defendant Galley and one or more of the correctional officer defendants engaged in a cover-up of the killing of the Decedent.[14]   In addition, Plaintiffs have

---

[14] Plaintiffs also have not alleged facts in the complaint relating to Mercer's investigation.  Plaintiffs make the following conclusory statements in the proposed count:

> Defendant Mercer violated the aforementioned
> Constitutional rights by (a) failing to notify
> Maryland State Police in a timely manner as
> (continued...)

alleged no facts in their complaint tending to show that the alleged cover-up frustrated their access or rendered their present lawsuit ineffective. *See Trulock v. Freeh,* 275 F.3d 391, 405 (4th Cir. 2001) ("The liberal pleading requirements of [Fed.R.Civ.P.] 8(a) demand only a short and plain statement of the claim.  A plaintiff often must offer more detail, however, than the bald statement that he has a valid claim of some type against the defendant." (internal quotation marks omitted)).  Even if Plaintiffs had included in their complaint the allegations in their reply memorandum (e.g., Mercer's destruction of and failure to conduct testing on the spit mask placed over the Decedent's head and his failure to preserve the clothes the Decedent was wearing) and the court accepted them as true for purposes of the motion,

---

[14](...continued)
> required by law; (b) destroying evidence; (c) conducting a completely subjective investigation; (d) acting in concert with the individuals being investigated; (e) violating the applicable standard as to the preservation of evidence; (f) violating the applicable standard as to conducting interviews; (g) purposefully failing to employ any crime scene technicians or to adequately conduct any crime scene processing; (h) failing to preserve or examine the cell from which Decedent was extracted; (i) failing to notify next of kin in a timely manner; and (j) otherwise intentionally failing to conduct an impartial and thorough investigation.

(Paper 59, attach. 1, at ¶ 37).  Conclusory statements are insufficient to satisfy a motion to dismiss. *See White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (affirming dismissal of the plaintiff's complaint because it failed to contain any factual allegations to support his claim of denial of access to the courts).

Plaintiffs have failed to state specifically how Mercer's actions frustrated them in preparing and filing their suit and how his actions have negatively impacted their access to the courts, especially in light of the litigation pending currently.

A second reason Plaintiff's proposed access-to-courts claim would be futile is that Mercer would be entitled to qualified immunity.  Qualified immunity:

> protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).  It protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992).  Thus, government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

*Short v. Smoot*, 436 F.3d 422, 426-27 (4th Cir. 2006).  In considering qualified immunity:

> The threshold question that a court must first answer is whether the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established;" that is, "whether it would be

> clear to a reasonable officer that his conduct
> was unlawful in the situation he confronted."

*Mazuz v. Maryland*, 442 F.3d 217, 225 (4th Cir. 2006)(quoting *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001))(internal citations omitted). *See also Owens ex rel. v. Lott,* 372 F.3d 267, 273 (4th Cir. 2004), *cert. denied*, 534 U.S. 1050 (2005); *Henderson v. Simms,* 223 F.3d 267, 271 (4th Cir. 2000), *cert. denied*, 531 U.S. 1075 (2001); *Vathekan v. Prince George's County,* 154 F.3d 173, 179 (4th Cir. 1998).

When qualified immunity is raised in a motion to dismiss, the complaint is to be dismissed unless the plaintiff's allegations state a claim of violation of clearly established law. *Pennington v. Teufel*, 396 F.Supp.2d 715, 726 (N.D.W.Va. 2005) (citing *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569 (10th Cir. 1996)), *aff'd on other grounds*, 2006 WL 460921 (4th Cir. 2006). *See also S.P. v. City of Takoma Park*, 134 F.3d 260, 265 (4th Cir. 1998)(affirming a district court's dismissal based on qualified immunity because the plaintiff "failed to allege facts demonstrating the violation of clearly established law"); *Jenkins v. Medford*, 119 F.3d 1156, 1160 (4th Cir. 1997) ("When reviewing a claim of qualified immunity, we consider whether the plaintiff has been deprived of a constitutional right.  If the complaint shows that the plaintiff has not suffered such a deprivation, the defendant is entitled to dismissal of the claim under Rule 12(b)(6).").  The complaint must

recite the necessary facts and the plaintiff's response to the motion must cite to the applicable law. *See Baumeister v. New Mexico Commission for the Blind*, 425 F.Supp.2d 1250, 1268 (D.N.M. 2006).

Plaintiffs did not address the qualified immunity issue in their papers. Nevertheless, the court will attempt to discuss the possible sources of "clearly established law." A right is clearly established "when 'its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ridpath*, 447 F.3d at 313 (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002)). The exact action in question need not have been held to be unlawful "because 'general statements of the law are not inherently incapable of giving fair and clear warning, and . . . a general constitutional rule already identified in the decision law may apply with obvious clarity to the specific conduct in question.'" *Ridpath*, 447 F.3d at 313 (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)); *Owens*, 372 F.3d at 279. The court therefore must consider "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle involved." *Owens*, 372 F.3d at 279 (quoting *Amaechi v. West*, 237 F.3d 356, 362-63 (4th Cir. 2001)). The key issue is whether the law, when the events in question occurred, "gave the officials 'fair warning'

that their conduct was unconstitutional." *Ridpath*, 447 F.3d at 313.

Plaintiffs allege generally that Mercer impeded their First Amendment right of access to the courts by conducting an inadequate investigation. The Supreme Court has recognized a constitutional right of access to the courts, such as where official action frustrates a plaintiff in preparing and filing his or her suit or where "official acts . . . may allegedly have caused the loss or inadequate settlement of a meritorious case."[15] *Harbury*, 536 U.S. at 413-14. Plaintiffs here appear to claim impairment, but not total denial, of their claim. Any such rights with respect to denial of access to the courts as implicated in this case, however, are not clearly established even at this time, much less when Mercer acted after the Decedent's death on April 30, 2004.[16] The Supreme Court in *Harbury* did not delineate the parameters of a denial of access to the courts claim. Although the Court identified federal appellate court cases involving allegations that law enforcement officials intentionally engaged in conduct aimed at

---

[15] Even if the *Harbury* plaintiff had properly stated a claim, the facts differ significantly in that they involved an alleged federal government deception of a United States citizen who sought information about her husband, a Guatemalan rebel leader who vanished in his own country. Here, Plaintiffs allege, *inter alia*, the destruction of evidence in a correctional institution.

[16] The papers do not indicate when Mercer conducted his investigation into Decedent's death, although from Mercer's deposition it appears that he began investigating on the day of the cell extraction.

interfering with the plaintiff's right to bring a lawsuit, *see e.g.*
*Delew v. Wagner*, 143 F.3d 1219 (9th Cir. 1998); *Bell v. City of*
*Milwaukee*, 746 F.2d 1205 (7th Cir. 1984); *Ryland v. Shapiro*, 708
F.2d 967 (5th Cir. 1983), the Court stated that "we assume, without
deciding, the correctness of the decisions."[17]  *Harbury*, 536 U.S.
at 414 n.9.

Within the Fourth Circuit, Plaintiffs have pointed to one
published case, *Washington v. Wilmore*, 407 F.3d 274 (4th Cir. 2005),
as supporting their argument that a First Amendment denial of
access to the courts claim may arise where a state actor destroys
evidence and willfully impedes an investigation.  That case,
however, dealt with a different right: "the violation of [the
plaintiff's] right not to be deprived of liberty as a result of the
fabrication of evidence by an investigating officer."  *Id*.

Plaintiffs' citations to cases outside the Fourth Circuit also
are unavailing.  "When there are no such decisions from courts of
controlling authority, we may look to a 'consensus of cases of
persuasive authority' from other jurisdictions, if such exists."
*Owens*, 372 F.3d at 280 (quoting *Wilson v. Layne,* 526 U.S. 603
(1990)).  Other jurisdictions are not in agreement with respect to

---

[17] The Court also noted that the law is unsettled as to whether
the constitutional right of access to courts is grounded in the
Article IV Privileges and Immunities Clause, the First Amendment
Petition Clause, the Fifth Amendment Due Process Clause, or the
Fourteenth Amendment Equal Protection and Due Process Clauses.
*Harbury*, 536 U.S. at 415 n.12.

a claim involving access to the courts, including the contours of such a claim. *See Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005). For instance, the Seventh Circuit has identified a broader right than that identified by the United States Court of Appeals for the Fifth Circuit. *Foster*, 28 F.3d at 430 n.7 ("We question *Bell's* reliance on *Ryland* [a case decided by the Fifth Circuit] for any broader definition of right of access than one encompassing the right to institute suit."). In addition, the United States Court of Appeals for the Tenth Circuit has questioned whether the Supreme Court endorsed the validity of backward claims in *Harbury*. *Jennings*, 383 F.3d at 1209.

Because the Supreme Court has given limited guidance on the access-to-the-courts issue in the context of investigation into possible misconduct by government employees, no Fourth Circuit case has addressed the issue directly, and other courts are not in agreement, the law is not clearly established now, nor was it clearly established when Mercer acted, concerning any right not to have a claim impaired by lax investigation. Plaintiffs have failed to meet their burden to show that Mercer's conduct violated clearly established law, and Mercer therefore would be entitled to qualified immunity if Plaintiffs were granted leave to amend to add the proposed count. It follows, then, that allowing Plaintiffs to amend their complaint to add a count for denial of access to the courts would be futile. Accordingly, Plaintiffs' motion for leave

to amend their complaint to add proposed Count II for a § 1983 access to the courts claim is denied.

**C. Addition of Mercer to Gross Negligence Count VII**

Plaintiffs allege Defendants owed the Decedent a duty "to refrain from impeding his right to pursue legal redress."[18] (Paper 59, ¶ 60). Plaintiffs have failed to allege sufficient facts to support the existence of a duty owed by Mercer to the Decedent, or that Plaintiffs suffered damages as a result. Accordingly, Plaintiffs' motion to amend their complaint to add Mercer to the gross negligence claim will be denied.

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' motion to amend their complaint is granted in part and denied in part. A separate Order will follow.

                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge

---

[18] Neither party addressed this proposed change to the gross negligence count.